# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ROSAURA CAMPOS, EDNA ESPINOZA
AND SOFIA GONZALEZ,

       Plaintiffs,

vs.                                                                          No. CIV 11-0096 JB/LAM

LAS CRUCES NURSING CENTER, THI
OF NEW MEXICO AT LAS CRUCES, LLC, THI
OF NEW MEXICO, LLC, FUNDAMENTAL
ADMINISTRATIVE SERVICES, LLC and
KENNETH SCHULTZ,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss Plaintiffs'

Complaint, in Whole or in Part, Pursuant to Rules 12(b)(1) and 12(b)(6), filed February 4, 2011

(Doc. 3)("Motion"). The Court held a hearing on July 29, 2011. The primary issues are: (i) whether

the Plaintiffs Rosaura Campos, Edna Espinoza, and Sofia Gonzalez properly detailed in Plaintiffs'

First Amended Complaint (dated January 4, 2011), filed January 28, 2011 (Doc. 1, Ex. 2)("Amended

Complaint"), the specifics of the exhaustion of their administrative remedies; and (ii) whether each

of the Plaintiffs has exhausted her administrative remedies under the New Mexico Human Rights

Act, N.M.S.A. 1978, § 28-1-7 ("NMHRA"), against all of the Defendants -- Las Cruces Nursing

Center, THI of New Mexico at Las Cruces, LLC, THI of New Mexico, LLC, Fundamental

Administrative Services, LLC ("FAS") and Kenneth Schultz.[1]   For their NMHRA claims, the

Plaintiffs have not sufficiently pled the exhaustion of their remedies in their Complaint, but the

---

[1]The Plaintiffs misnamed Defendant Kenneth Shull as Defendant Kenneth Schultz.  The
Court will use the name Shull in its Opinion.

Court considered the documents submitted with Plaintiffs' Repsonse [sic] to Defendants' Motion

to Dismiss in Whole or in Part and Brief in Support, filed February 16, 2011 (Doc. 5)("Response"),

in determining the Court's subject-matter jurisdiction over the Plaintiffs' claims.  The Plaintiffs

exhausted their administrative remedies on both their claims under the NMHRA and under Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.  The Plaintiffs exhausted

administrative remedies, however, only for Las Cruces Nursing Center and Shull.[2]  Accordingly, the

Court will grant in part and deny in part the Defendants' motion to dismiss.  The Court will dismiss

the Title VII claim against Shull.  The Court will deny the Motion with respect to the common-law

claims under state law against all of the Defendants.  THI of New Mexico at Las Cruces, LLC d/b/a

Las Cruces Nursing Center shall be substituted as the proper name for Las Cruces Nursing Center

and THI of New Mexico at Las Cruces, LLC.  Kenneth Shull shall be substituted as the proper name

for Kenneth Schultz.  The Motion is otherwise denied.

## FACTUAL BACKGROUND

All three of the Plaintiffs are citizens of the United States.  See Amended Complaint ¶¶ 1-3,

at 16-17.  Campos worked for the Defendants starting in June 1985.  See Amended Complaint ¶ 10,

at 18.  The Defendants hired Gonzalez and Espinoza in April and October 2009, respectively.  See

Amended Complaint ¶¶ 11-12, at 18.  All three allege discrimination by the Defendants based on

national origin, which ended only upon their termination from their employment with the

Defendants.  See Amended Complaint ¶¶ 13-15, at 18.  Campos and Espinoza also allege assault and

battery by Shull.  See Amended Complaint ¶¶ 27-28, at 21-22.

On March 24, 2010, Campos filed her charge of discrimination with the Equal Employment

---

[2]THI of New Mexico at Las Cruces, LLC d/b/a Las Cruces Nursing Center is the proper name for the employer entity-Defendant.

Opportunity Commission ("EEOC") and with the New Mexico Human Rights Division ("NMHRD").[3]  See Charge of Discrimination at 5 (dated March 24, 2010), filed February 16, 2011 (Doc. 5, Ex. 2)("Campos Charge of Discrimination").[4]  In this charge, Campos listed Las Cruces Nursing Center as the employer she believed discriminated against her and named "Kenneth Shall" as her administrator at her place of employment who discriminated against her.  Campos Charge of Discrimination at 5.  Campos discussed in the charge how Shull discriminated against her, including making ethnic comments against Hispanic people, making fun of Mexican employees because they do not speak English, and assaulting her.  See Campos Charge of Discrimination at 5.  Her Dismissal and Notice of Rights from the EEOC was dated July 29, 2010, see Dismissal and Notice of Rights at 3 (dated July 29, 2010), filed February 16, 2011 (Doc. 5, Ex. 2)("Campos Dismissal and Notice of Rights"), and her Order of Nondetermination from the NMHRD was dated September 16, 2010,

_____

[3]September 30, 2011The Plaintiffs attached copies of the charges to their response to the motion to dismiss.  See Response.  The Court may rely upon these exhibits without converting this motion to dismiss into a motion for summary judgment by taking judicial notice of the NMHRD's administrative record.  See Van Woudenberg ex rel. Foor v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000)("We note, however, that the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946 (10th Cir. 2001)(en banc); Martinez v. City & County of Denver, No. 08-01503, 2010 WL 1380529, at *1 (D. Colo. Mar. 31, 2010)(taking judicial notice of discrimination charges filed with the EEOC).  The United States Court of Appeals for Tenth Circuit has stated in the context of a Title VII claim: "[I]t is appropriate, particularly in the exhaustion context, for a district court to consider evidence beyond the pleadings in resolving a challenge to subject-matter jurisdiction."  Jenkins v. Educ. Credit Mgmt. Corp., 212 F.App'x 729, 732 (10th Cir. 2007)(citing Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)).  When a motion to dismiss for lack of subject-matter jurisdiction involves an attack on jurisdictional facts, there is no presumption of truthfulness, and the court has wide discretion to consider documents and evidence other than the complaint.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Williamson v. Tucker, 645, F.2d 404, 412-413 (5th Cir. 1981).

[4]On the Campos Charge of Discrimination, there is a box that asks: "I want this charge filed with both the EEOC and the State or local Agency, if any."  Campos Charge of Discrimination at 5-6.  Campos signed this box.  See Campos Charge of Discrimination at 5-6.

see Order of Nondetermination at 1 (dated September 16, 2010), filed February 16, 2011 (Doc. 5, Ex. 2)("Campos Order of Nondetermination").

On April 6, 2010, Espinoza filed her charge of discrimination with the EEOC and NMHRD. See Charge of Discrimination at 4 (dated April 6, 2010), filed February 16, 2011 (Doc. 5, Ex. 1)("Espinoza Charge of Discrimination").[5]  In her charge of discrimination, Espinoza listed Las Cruces Nursing Center as her employer and referred to "Kenneth Shull" when stating the particulars of her complaint.  Espinoza Charge of Discrimination at 4.  Espinoza described Shull's involvement in the discrimination, specifically that he made demeaning comments about a Hispanic housekeeper not knowing English, and that he stated he was demoting her to a part-time position and replacing her with another employee, who is Anglo, for pretextual reasons.  See Espinoza Charge of Discrimination at 4.  In her Intake Questionnaire filed with the EEOC, Espinoza named Las Cruces Nursing Center and "Kenneth Shull."  Intake Questionnaire at 14 (dated April 6, 2010),  filed February 16, 2011 (Doc. 5, Ex. 1)("Espinoza Intake Questionnaire").  Her Dismissal and Notice of Rights from the EEOC was dated July 28, 2010, and her Order of Nondetermination from the NMHRD was dated January 10, 2011.  See Dismissal and Notice of Rights at 2 (dated July 28, 2010), filed February 16, 2011 (Doc. 5, Ex. 1)("Espinoza Dismissal and Notice of Rights"); Order of Nondetermination at 1 (dated January 10, 2011), filed February 16, 2011 (Doc. 5, Ex. 1)("Espinoza Order of Nondetermination").

On September 22, 2010, Gonzalez filed her charge of discrimination with the EEOC and NMHRD.  See Charge of Discrimination at 5 (dated September 22, 2010),  filed February 16, 2011

_____

[5]On the Espinoza Charge of Discrimination, there is a box that asks: "I want this charge filed with both the EEOC and the State or local Agency, if any."  Espinoza Charge of Discrimination at 5-6.  Espinoza signed this box.  See Espinoza Charge of Discrimination at 5-6.

(Doc. 5, Ex. 3)("Gonzalez Charge of Discrimination").[6]  In her Charge of Discrimination, Gonzalez

listed the names of Las Cruces Nursing Center and "Ken Shall."  Gonzalez Charge of Discrimination

at 5.  In her charge of discrimination, Gonzalez stated that she overheard Shull making fun of a

Hispanic co-worker, Campos, because of her accent and that Shull engaged in other similar conduct.

See Gonzalez Charge of Discrimination at 5.  Gonzalez completed an EEOC Intake Questionnaire

that she dated April 5, 2010, but the EEOC office's timestamp indicates the office did not receive

the document until September 14, 2010.  See Intake Questionnaire at 11 (dated April 5, 2011), filed

February 16, 2011 (Doc. 5, Ex. 3)("Gonzalez Intake Questionnaire").  Her Notice of Right to Sue

(Issued on Request) from the EEOC was dated September 24, 2010, and her Order of

Nondetermination from the NMHRD was dated January 10, 2011.  See Gonzalez Notice of Right

to Sue (Issued on Request) at 3 (dated September 24, 2010), filed February 16, 2011 (Doc. 5, Ex.

3)("Gonzalez Notice of Right to Sue"); Gonzalez Order of Nondetermination at 1 (dated January

10, 2011), filed February 16, 2011 (Doc. 5, Ex. 3)("Gonzales Order of Nondetermination").

## PROCEDURAL BACKGROUND

The Plaintiffs filed their Original Complaint in the Third Judicial District Court, Dona Ana

County, State of New Mexico on September 23, 2010, and filed Plaintiffs' First Amended

Complaint on January 4, 2011.  See Plaintiffs' Original Complaint (dated September 23, 2010), filed

January 28, 2011 (Doc. 1, Ex. 2); Amended Complaint.  In the Amended Complaint, the Plaintiffs

alleged against all the Defendants: (i) NMHRA violations; (ii) Title VII violations; (iii) intentional

infliction of emotional distress claims; (iv) negligent training/supervision claims; and (v) assault and

---

[6]On the Gonzalez Charge of Discrimination, there is a box that asks: "I want this charge filed
with both the EEOC and the State or local Agency, if any."  Gonzalez Charge of Discrimination at
5-6.  Gonzalez signed this box.  See Gonzalez Charge of Discrimination at 5-6.

battery claims.  See Amended Complaint ¶¶ 19-28, 25-26, at 1, 20-22.  The Defendants removed the matter to federal court on January 28, 2011.  See Notice of Removal, filed January 28, 2011 (Doc. 1).  On February 4, 2011, the Defendants filed their motion to dismiss pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  See Motion.

In their Motion, the Defendants argue that the Plaintiffs have failed to exhaust their NMHRA and Title VII administrative remedies against all of the Defendants except Las Cruces Nursing Center.  See Motion at 2-4; Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Complaint, Pursuant to Rules 12(b)(1) and 12(b)(6), filed March 21, 2011 (Doc. 8)("Reply").  The Defendants also argue that the Plaintiffs have failed to allege that they exhausted their NMHRA administrative remedies against all of the Defendants except Las Cruces Nursing Center.  See Motion at 2-4; Reply at 1-2.  To their Response, the Plaintiffs attached various exhibits which they allege demonstrate that each of them properly complied with the exhaustion requirements.  See Response at 1-10.  In their Reply, the Defendants argue that the Plaintiffs failed to allege administrative exhaustion as to each of the Defendants.  See Reply at 2.  They argue that the Plaintiffs did not exhaust their administrative remedies until they received their order of nondetermination from the NMHRD and that the right-to-sue letter from the EEOC is not sufficient to satisfy the exhaustion requirements under New Mexico law.  See Reply at 3 n.3.  The Defendants also contend that the Plaintiffs offer no evidence that THI of New Mexico, FAS, and Kenneth Shull were named as individual respondents in any filed charge of discrimination.  See Reply at 3.  The Defendants also argue that the Defendants did not have an opportunity to answer Gonzalez' administrative charges based on the timing of the EEOC right-to-sue letter and the filing of the complaint in this case.  See Reply at 4 n.4.  In their Reply, the Defendants did not object to consideration of the exhibits the Plaintiffs filed in the context of this Motion.  See Reply at 2-4.  The

Defendants also did not object to consideration of these documents at the hearing.

At the July 29, 2011 hearing, the parties and the Court discussed the proper naming of the parties and the style of the case. See Transcript of Hearing at 2:13-3:14 (taken July 29, 2011)("Tr.")(Court, Labinoti, Howell).[7]  The Defendants clarified that they answered the case on behalf of THI New Mexico at Las Cruces, LLC. See Tr. at 8:21-22 (Howell).  The Defendants stated that the confusion over the naming of these entities arose because of Campos' designations in her charge filed with the NMHRD and the Original Complaint. See Tr. at 8:9-8:20 (Howell).  The Defendants did not dispute that THI of New Mexico at Las Cruses, LLC was properly named in the relevant EEOC charges and is properly a defendant in this case. See Tr. at 8:5-15 (Howell).  The Defendants conceded that "THI of New Mexico at Las Cruces is the actual employer of these [Plaintiffs] and that's why they drew the charge." Tr. at 14:14-14:16 (Howell).  The Defendants requested that the Court dismiss THI of New Mexico, FAS, and Shull as Defendants because none of them are named as respondents on the administrative discrimination charges. See Tr. at 4:8-15 (Howell).  The Plaintiffs argued at the hearing that including in the charges filed with the administrative agencies the name under which the Defendants do business satisfies the applicable exhaustion requirements. See Tr. at 10:17-25 (Labinoti).  The Defendants did not argue at the hearing or in their Motion that the common-law claims under state law could not proceed against any of the parties. See Motion at 1-5; Tr. at 12:17-16:10 (Howell, Court, Labinoti).

## LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a

---

[7]The Court's citations to the transcript are to the court reporter's original, unedited version. Any final version may have slightly different line or page numbers.

jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted).   A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence."). The Court is responsible for ensuring, even *sua sponte*, that it has subject-matter jurisdiction before considering a case.  See Daigle v. Shell Oil Co., 972 F.2d 1527, 1539 (10th Cir.1992).

Rule 12(b)(1) allows a party to raise the defense of the court's "lack of subject-matter jurisdiction" by motion. Fed. R. Civ. P. 12(b)(1).  The United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. [1981).]  But when the attack is factual, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9 (D.N.M. Mar.11, 2009)(Browning, J.)(citations omitted), aff'd, 634 F.3d 1170 (10th Cir. 2011).  As the United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the

-8-

existence of disputed material facts will not preclude the trial court from evaluating
for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortenson v. First Fed. Sav.
& Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  Where, however, the court determines that
jurisdictional issues raised in rule 12(b)(1) motion are intertwined with the case's merits, the court
should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United
States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippet v. United States, 108 F.3d 1194, 1196 (10th
Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular
dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution
of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296
(10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir.
2002)).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss for failure to state a claim.  The court may
dismiss a complaint *sua sponte* with prejudice under rule 12(b)(6) of the Federal Rules of Civil
Procedure for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail
on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." Hall
v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)(quoting McKinney v. Okla., Dep't of Human
Servs., 925 F.2d 363, 365 (10th Cir. 1991)).  "The nature of a Rule 12(b)(6) motion tests the
sufficiency of the allegations within the four corners of the complaint after taking those allegations
as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint
is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must
accept as true all well-pled factual allegations in the complaint, view those allegations in the light

most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Smith v. United States, 561 F.3d 1090, 1097 (10th Cir. 2009); Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991). A complaint challenged by a rule 12(b)(6) motion to dismiss does not need to set forth detailed factual allegations, but a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 129 S.Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. at 1940 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

### LAW REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES

A plaintiff must administratively exhaust both Title VII and NMHRA claims before bringing them in federal court. Title VII creates a work-sharing deferral system between the EEOC and the states that have their own employment discrimination legislation. See 42 U.S.C. § 2000e-5(c), (d). In the states that possess their own employment discrimination legislation, the EEOC must generally defer to state or local remedies. See EEOC v. Superior Temp. Servs., Inc., 56 F.3d 441, 447 (2d Cir. 1995). The NMHRA places New Mexico among those states that have their own employment discrimination legislation and contact agencies. See 29 C.F.R. § 1601.74 (2011). In New Mexico, a complainant can, upon meeting filing requirements, proceed with his or her grievance either

through the EEOC or through the NMHRD.  See Mitchell-Carr v. McLendon, 127 N.M. 282, 286,

980 P.2d 65, 69 (1999).  Whether complainants decide to pursue their grievances with the EEOC

or with the NMHRD, they must exhaust their respective regimes' administrative remedies before

seeking judicial review.  See Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996)("Exhaustion of

administrative remedies is a jurisdictional prerequisite to suit under Title VII."); Mitchell-Carr v.

McLendon, 127 N.M. at 288, 980 P.2d at 71 ("[E]xhaustion of administrative remedies is a

prerequisite to suit under the NMHRA." (citing Luboyeski v. Hill, 117 N.M. 380, 382, 872 P.2d 353,

355 (1994)). Under the work-sharing agreement between the EEOC and the NMHRD, each agency

designates the other as its agent for the purpose of receiving and drafting charges.  See Mitchell-Carr

v. McLendon, 127 N.M. at 286, 980 P.2d at 69.  Thus, if a person "initially files a complaint with

the EEOC, that complaint will be deemed to have been properly filed with the [NMHRD] as well."

Mitchell-Carr v. McLendon, 127 N.M. at 286, 980 P.2d at 69.

## 1.    The Exhaustion of Administrative Remedies Under the NMHRA.

The NMHRA makes it an unlawful discriminatory practice for:

> [A]n employer, unless based on a bona fide occupational qualification or other
> statutory prohibition, to refuse to hire, to discharge, to promote or demote or to
> discriminate in matters of compensation, terms, conditions or privileges of
> employment against any person otherwise qualified because of race, age, religion,
> color, national origin, ancestry, sex, physical or mental handicap or serious medical
> condition . . . .

N.M.S.A. 1978, § 28-1-7.  To bring an NMHRA suit in district court, a plaintiff is required to

exhaust the administrative grievance process with respect to all defendants named in the district-

court lawsuit.  See Luboyeski v. Hill, 117 N.M. at 383, 872 P.2d at 356 ("Since [the plaintiff] has

not gone through the administrative process that is prerequisite to suing the individual defendants

under the Human Rights Act, we affirm the trial court's order dismissing those defendants.").  To

exhaust administrative remedies under the NMHRA, a person must: (i) file a complaint with the NMHRD or the EEOC making sufficient allegations to support the complaint; and (ii) receive an order of nondetermination from the NMHRD.  See Mitchell-Carr v. McLendon, 127 N.M. at 287, 980 P.2d at 70.  Notably, a right-to-sue letter from the EEOC does not substitute for an order of nondetermination from the NMHRD under New Mexico law, based on the differences in the administrative powers of each agency.  See Mitchell-Carr v. McLendon, 127 N.M. at 286-87, 980 P.2d at 69-70 ("Our conclusion that the work-sharing agreement contemplates dual filed charges, but not a shared resolution of those charges by the EEOC and the Division, follows from significant differences in administrative authority under federal and state law.").

The Supreme Court of New Mexico has affirmed that defendants who were not named in the administrative proceeding cannot be added to the appeal to the district court.  See Mitchell-Carr v. McLendon, 127 N.M. at 286, 980 P.2d at 69 ("None of the Appellants named McLendon as an individual respondent in these charges; each named only the Union as a respondent.  Therefore, we conclude that the district court property granted summary judgment on Appellants' NMHRA claims against McLendon.").  "[I]ndividual defendants cannot be sued in district court under the Human Rights Act unless and until the complainant exhausts her administrative remedies against them."  Luboyeski v. Hill, 117 N.M. at 383, 872 P.2d at 356.  See Sonntag v. Shaw, 130 N.M. 238, 243, 22 P.3d 1188, 1193 (2001)(dismissing an individual defendant from the case because the plaintiff had not named the defendant in her complaint to the NMHRD).

## 2.  The Exhaustion of Administrative Remedies under Title VII.

Title VII prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 706(f)(1) of Title VII, 42 U.S.C. §

2000e-5(f)(1), allows a plaintiff to bring a civil action only against the respondent that he or she

named in the EEOC charge, and only after administrative remedies have been exhausted. See

Romero v. Union Pac. R.R., 615 F.2d 1303, 1311 (10th Cir. 1980). "Under long-standing [Tenth]

[C]ircuit precedent, supervisors and other employees may not be held personally liable under Title

VII." Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1083 n.1 (10th Cir. 2007). See also

Haynes v. Williams, 88 F.3d 898, 899 (10th Cir. 1996)("The relief granted under Title VII is against

the employer, not individual employees whose actions would constitute a violation of the Act.").

Because laypersons, not attorneys, usually write EEOC complaints, they are liberally construed. See

Romero v. Union Pac. R.R., 615 F.2d at 1311. This naming requirement, however, is not merely

a technicality, but rather "brings the charged party before the EEOC and permits effectuation of the

Act's primary goal, the securing of voluntary compliance with the law." Alvarado v. Bd. of Trs.,

848 F.2d 457, 458 (4th Cir. 1988)(quoting Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th

Cir. 1969)).

    There are narrow exceptions to the rule requiring that each defendant be specifically named

as a respondent in an EEOC charge. For example, where the defendant is mentioned in the text of

the charge or "where there is sufficient identity of interest between the respondent and the defendant

to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have

an opportunity to attempt conciliation." Romero v. Union Pac. R.R., 615 F.2d at 1311. Four factors

are pertinent to the determination whether the omission of a defendant's name requires automatic

dismissal in the court action under Title VII:

> 1) whether the role of the unnamed party could through reasonable effort by the
> complainant be ascertained at the time of the filing of the EEOC complaint;
> 2) whether, under the circumstances, the interests of a named [party] are so similar

as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Romero v. Union Pac. R.R., 615 F.2d at 1312  (quoting Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977)).  Additional relevant factors may also be evaluated.  See Romero v. Union Pac. R.R., 615 F.2d at 1312.

Before commencing a Title VII action in federal court in a state with an agency empowered to investigate employment discrimination, like the NMHRD, "a plaintiff first must exhaust administrative remedies by filing a charge of discrimination with the EEOC within 300 days of the allegedly unlawful employment practice."  Castaldo v. Denver Public Sch., 276 F.App'x 839, 841 (10th Cir. 2008).  To exhaust administrative remedies, an individual claimant must: (i) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue.  See 42 U.S.C. §§ 2000e-5(b)-(c), (e), (f)(1).[8]  "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter."  Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999).

### 3.	The Exhaustion of Administrative Remedies Is a Jurisdictional Requirement.

In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to filing a Title VII lawsuit.  See Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1183 (10th Cir.

---

[8]"Whenever a charge is filed by or on behalf of a person claiming to be aggrieved" by their employer, "the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer . . . within ten days, and shall make an investigation thereof."  See 42 U.S.C. § 2000e-5.

2007); Alcivar v. Wynne, 268 F.App'x 749, 753 (10th Cir. 2008)(unpublished)("The Tenth Circuit has consistently held that 'exhaustion . . . is a jurisdictional prerequisite to suit under Title VII -- not merely a condition precedent to suit.'" (quoting Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005)); Sampson v. Civiletti, 632 F.2d 860, 862 (10th Cir. 1980)("Exhaustion of administrative remedies is a jurisdictional prerequisite to suit" under Title VII.); Romero v. Union Pac. R.R., 615 F.2d at 1311.

Without exhaustion of administrative remedies, federal courts lack subject-matter jurisdiction to entertain discrimination claims under that statute, and a rule 12(b)(1) motion to dismiss is procedurally proper. See Seymore v. Shawyer & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997); Carmody v. SCI Colo. Funeral Servs., Inc., 76 F. Supp. 2d 1101, 1103-04 (D. Colo. 1999). The Tenth Circuit has raised some concern whether failure to exhaust administrative remedies is still a jurisdictional prerequisite to suit after the Supreme Court of the United States' decision in Jones v. Bock, 549 U.S. 199 (2007). See, e.g., Alcivar v. Wynne, 268 F.App'x at 753 (noting that "Jones v. Bock held that under the PLRA [Prison Litigation Reform Act, 18 U.S.C. § 3236] exhaustion is an affirmative defense to be raised by the defendant and not a jurisdictional pleading requirement," but finding it was "not . . . necessary to decide whether exhaustion is jurisdictional under Title VII after Jones v. Bock"); McQueen v. Colo. Springs Sch. Dist. No. 11, 488 F.3d 868, 874 (10th Cir. 2007)("Although courts have repeatedly referred to the exhaustion requirement as jurisdictional, . . . recent Supreme Court jurisprudence in other contexts casts doubt on that characterization . . . ." (citations omitted)).  A recent unpublished Tenth Circuit decision indicates that Jones v. Bock did not demote the exhaustion requirement from a jurisdictional prerequisite to an affirmative defense, at least in the Title VII context.  See Martinez v. Target Corp., No. 09-2112, 2010 WL 2616651, at *3 n.2 (10th Cir. July 1, 2010)(Kelly, Porfilio, O'Brien, JJ.)("Martinez is not proceeding under the

-15-

PLRA; Bock is inapposite.  She does not point us to a single decision -- of this or any other court -- applying Bock in the context of a Title VII or ADEA case.").

### 4. The Failure to Exhaust Administrative Remedies May Be Cured.

"[T]he failure to obtain a right-to-sue letter prior to the commencement of a suit is a curable defect." Martin v. Cent. States Emblems, Inc., 150 F.App'x 852, 855 n.3 (10th Cir. 2005)(unpublished)(quoting Jones v. Am. State Bank, 857 F.2d 494, 499 (8th Cir.1988)).[9]  A Title VII complainant may file an action before receiving a right-to-sue letter, so long as the record contains no evidence that the premature filing deterred the EEOC from performing its administrative duties or that the premature filing caused any prejudice to defendant. See Martin v. Cent. States Emblems, Inc., 150 F.App'x at 855 n.3.  Such an interpretation is reasonable under the NMHRA also.  See Mitchell-Carr v. McLendon, 127 N.M. 282, 288, 980 P.2d 65, 71 (1999).  Even for jurisdictional defects, the Supreme Court of New Mexico has stated:

> A dismissal for lack of subject matter jurisdiction generally is without prejudice. Thus, it is not uncommon for courts to allow jurisdictional defects to be cured by granting leave to amend the complaint, or to postpone ruling on a jurisdictional issue until the parties have had the opportunity to conduct discovery and present evidence on that issue.

See Mitchell-Carr v. McLendon, 127 N.M. at 288, 980 P.2d at 71 (citations omitted).  Specifically, the Supreme Court of New Mexico has stated that receiving an order of nondetermination from the NMHRD after the filing of a district court complaint suffices to exhaust the plaintiff's administrative remedies.  See Mitchell-Carr v. McLendon, 127 N.M. at 288, 980 P.2d at 71.

--------

[9]Other circuits have also held that failure to obtain a right-to-sue letter is a defect that can be cured after the filing of the suit. See Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1104 (9th Cir. 2008)("Failure to obtain a federal right-to-sue letter does not preclude federal jurisdiction."); Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 309 (6th Cir. 2000)("However, the failure to obtain a right-to-sue letter is not a jurisdictional defect; rather the right-to-sue letter is a condition precedent.").

<u>**ANALYSIS**</u>

The Court may look outside the Amended Complaint in making its decision regarding subject-matter jurisdiction without converting the motion to dismiss to a motion for summary judgment.  In making its analysis, the Court removes from consideration the Plaintiffs' legal conclusions, including those clothed as factual allegations.  When the Court conducts its record analysis, the Court concludes that the Plaintiffs have not exhausted some of their claims against some of the Defendants, specifically Defendants THI of New Mexico, FAS, and Shull.

**I.    THE PLAINTIFFS HAVE NOT SUFFICIENTLY PLED EXHAUSTION OF REMEDIES FOR THEIR NMHRA AND TITLE VII CLAIMS.**

In their Amended Complaint, the Plaintiffs contend that they "timely filed charges of national origin discrimination with the Equal Employment Opportunity Commission and satisfied all administrative requirements for filing this suit." Amended Complaint ¶ 30, at 22.  In their motion to dismiss, the Defendants assert that, "[w]hile purporting to assert NMHRA claims against all 'Defendants,'. . . Plaintiffs fail to allege administrative exhaustion against each of them."  Motion at 3.  The Defendants further assert that the Plaintiffs' assertion of exhaustion of administrative remedies as set forth in the Amended Complaint is too vague and conclusory, particularly because it does not state where or when the charges were filed, who filed against whom, the determination of the process, or whether the current lawsuit is an appeal of the decision.  <u>See</u> Motion at 3.  Additionally, they argue that the Plaintiffs did not exhaust their administrative remedies against any entity except Las Cruces Nursing.  <u>See</u> Motion at 4.  The Defendants contend that the Plaintiffs did not exhaust their administrative remedies until they received their order of nondetermination from the NMHRD and that the right-to-sue letter from the EEOC was not sufficient to satisfy the exhaustion requirements under New Mexico law.  <u>See</u> Reply at 3 n.3.  The Defendants also argue

that they did not have an opportunity to answer Gonzalez' administrative charges based on the timing of the EEOC right-to-sue letter and the filing of the Original Complaint in this case. <u>See</u> Reply at 4 n.4.

In response, the Plaintiffs assert: "Plaintiff [sic] requests that the Court allow Plaintiff to file the Amended Pleadings to where Plaintiff in detail specifics and incorporates and attaches as exhibit[s] the evidence of exhaustion of remedies." Response ¶ 36, at 7. "A plaintiff invoking the court's subject matter jurisdiction 'must allege in his pleadings the facts essential to show jurisdiction' and, if challenged, must support those allegations by a preponderance of the evidence." <u>Pretlow v. Garrison</u>, 420 F.App'x 798, 802 (10th Cir. March 22, 2011)(quoting <u>Celli v. Shoell</u>, 40 F.3d 324, 327 (10th Cir. 1994)). Nevertheless, "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Fed. R. Civ. P. 9(c). While the Plaintiffs may have satisfied rule 9(c) for purposes of contract law, the Plaintiff's bare bone allegations do not satisfy the Plaintiffs' obligation to establish jurisdiction. Here, the Plaintiffs allege only that the "Plaintiffs timely filed charges of national origin discrimination with the Equal Employment Opportunity Commission and satisfied all administrative requirements for filing this suit." Amended Complaint ¶ 30, at 22. These factual allegations are conclusory and do not sufficiently demonstrate that the Plaintiffs have met their obligation to exhaust their administrative remedies. A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. at 104. Because the Defendants have challenged these allegations, the Plaintiffs have the obligation to support them by a preponderance of the evidence, a standard the current allegations cannot satisfy.

The Plaintiffs have, however, provided to the Court in their Response the applicable documents to evidence exhaustion. Because the Defendants will not be prejudiced by the Court considering these documents, the Court will analyze these documents the Plaintiffs have provided to determine whether it has subject-matter jurisdiction over each of the Plaintiffs' federal claims. Additionally, in their Reply, the Defendants did not object to consideration of these documents in the context of this Motion and, in fact, discussed in detail the documents that the Plaintiffs attached to their Response. See Reply at 2-4. The Defendants also did not object to consideration of these documents at the hearing. In their Motion, the Defendants cited to authority stating that the Court can consider evidence beyond the complaint in the context of a 12(b)(1) motion. See Motion at 4-5.

## II.    THE PLAINTIFFS HAVE EXHAUSTED THEIR ADMINISTRATIVE REMEDIES AGAINST THI OF NEW MEXICO AT LAS CRUCES.

The Defendants specifically contend that all of the Plaintiffs' NMHRA claims, except those against the Las Cruces Nursing Center should be dismissed. See Doc. 3 at 4. They argue that "neither the response nor its attachments establishes an exhaustion of administrative remedies as to any entity except THI of New Mexico at Las Cruces, LLC." Reply at 3. They state that "Plaintiffs offer no evidence (and, in fact, do not even argue) that Defendants THI of New Mexico, LLC, Fundamental Administrative Services, LLC and Kenneth Shull were named as individual Respondents in any Charge of Discrimination." Reply at 3. They acknowledge that "the only entity shown to respond to any of these Charges was 'THI of New Mexico at Las Cruces, LLC d/b/a/ Las Cruces Nursing Center,'" and argue that the "Defendants' motion remains proper, and dismissal should be granted, as to each Plaintiff's statutory discrimination claims against any Defendant except THI of New Mexico at Las Cruces, LLC d/b/a/ Las Cruces Nursing Center." Reply at 3-4. The Plaintiffs respond that the motion is frivolous because the Defendants knew they were "a party

to the EEOC and New Mexico Human Right[s] Division pursuant work sharing agreement" and "that Plaintiff has exhausted administrative remedies against all proper parties."  Response at 1.

Because a more detailed discussion of the proper employer-Defendant's name occurred at the hearing, an analysis of whether THI of New Mexico at Las Cruces, LLC is a proper Defendant is unnecessary.  The Defendants conceded at the hearing that "THI of New Mexico at Las Cruces is the actual employer of these [Plaintiffs] and that's why they drew the charge."  See Tr. at 14:14-14:16 (Howell).   The Defendants request that THI of New Mexico, LLC, Fundamental Administrative Services, LLC and Ken Shull be dismissed as Defendants because none of them are named as respondents on the administrative discrimination charges.  See Tr. at 4:8-4:15 (Howell). The Plaintiffs vaguely argued at the hearing that THI of New Mexico and Fundamental Administrative Services did business as Las Cruces Nursing Center, and that they might be relevant Defendants to the case, see Tr. at 7:5-13, 10:17-11:18 (Labinoti) but, looking to the charges filed by the Plaintiffs, each of the charges only name Las Cruces Nursing Center as respondent.  Under Title VII, a plaintiff must normally name a respondent in the charge of discrimination to exhaust their administrative remedies against that respondent.  Additionally, a plaintiff does not exhaust his or her administrative remedies under the NMHRA unless she named the individual defendant in her administrative charge.  See Mitchell-Carr v. McLendon, 127 N.M. at 286, 980 P.2d at 69.  The Plaintiffs did not exhaust their administrative remedies against THI of New Mexico, LLC or Fundamental Administrative Services, LLC.

In their response, "Plaintiff [sic] requests the Court allow the Plaintiffs to file the Amended Pleading to properly correct the misnomer, misspelling of Defendant's names in the pleading from Las Cruces Nursing Center and THI of New Mexico at Las Cruces, LLC to THI of New Mexico at Las Cruces, LLC, d/b/a Las Cruces Nursing Center and Kenneth Schultz to Kenneth Shull."

Response ¶ 37, at 7-8.  Instead of requiring the Plaintiffs to file another amended Complaint,[10] the

Court, under its inherent authority pursuant to Fed. R. Civ. P. 83[11] and because the Defendants have

acknowledged that the proper naming of the Defendant should be THI of New Mexico at Las

Cruces, LLC d/b/a Las Cruces Nursing Center, will substitute the name THI of New Mexico at Las

Cruces, LLC d/b/a Las Cruces Nursing Center as the employer-Defendant in this matter, and the

remaining entities as Defendants in this case.[12]

---

[10]The Court notes that, since the date the Court held a hearing on this Motion, the Plaintiffs have already amended their Complaint, and have renamed Defendant Las Cruces Nursing Center and THI of New Mexico at Las Cruces, LLC to THI of New Mexico at Las Cruces, LLC, d/b/a Las Cruces Nursing Center, and Kenneth Schultz to Kenneth Shull.  See Plaintiffs' Second Amended Complaint at 1, filed September 15, 2011 (Doc. 22).

[11]The United States Court of Appeals for the Ninth Circuit has recognized that district courts can account for "the lack of an explicit rule specifically covering . . . [a] situation because, pursuant to the court's inherent power and Fed. R. Civ. P. 83, 'when there is no Federal Rule, and no local rule, the court may fashion one not inconsistent with the Federal Rules.'"  Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 951 (9th Cir. 1976).  For example, a district court can require represented clients to attend pretrial settlement conferences, even though the Federal Rules of Civil Procedure do not specifically authorize such a practice.  See In re Atl. Pipe Corp., 304 F.3d 135, 143 (1st Cir. 2002).  Furthermore:

> Pursuant to this rule, a district judge may establish personal "standing orders" regulating practice before his court (and subsequently punish parties for violating those rules), so long as (1) those procedures are consistent with federal law and the Rules of Civil Procedure; and (2) the violating party had "actual notice" of the rule.

See Tucker v. Colo. Dep't of Pub. Health & Env't, 104 F.App'x 704, 707 (10th Cir. 2004)(unpublished).

[12]The Plaintiffs have not addressed in their Amended Complaint or Response any of the four factors pertinent to a determination whether the omission of a defendant's name in the EEOC charge requires automatic dismissal of that defendant in a Title VII or NMHRA claim.  At the hearing, the Plaintiffs presented no justification why these claims should proceed against the other entities named as Defendants.  At the hearing, the Plaintiffs' counsel stated:

> I do not know, your Honor, whether Fundamental Administrative Services LLC is an employer or not.  If the defense counsel or [i]f the Defendant is stipulating that the proper employer in the case is just Las Cruces Nursing Center, the d/b/a Las

The Defendants argue that not all the Plaintiffs filed their lawsuit after receiving their determination documents from the NMHRD.  See Tr. 7:1-7:4 (Labinoti).  In further determining whether it has subject-matter jurisdiction over all of the claims, the Court will consider the specific administrative processes of each of the Plaintiffs for both their NMHRA and Title VII claims.  Notably, the Supreme Court of New Mexico has stated that receiving an order of nondetermination from the NMHRD after the filing of a district court complaint suffices to exhaust the plaintiff's administrative remedies.  See Mitchell-Carr v. McLendon, 127 N.M. at 288, 980 P.2d at 71.

Campos filed her administrative charges, and received her Order of Nondetermination from the NMHRD and her Dismissal and Notice of Rights for her claims against Las Cruces Nursing Center before filing this case.  See Campos Order of Nondetermination at 1; Campos Dismissal and Notice of Rights at 3.  She exhausted her administrative remedies, and the Court has subject-matter jurisdiction over her claims.  Espinoza filed her administrative charges against Las Cruces Nursing Center before she filed this case.  See Espinoza Charge of Discrimination at 4.  She received her Dismissal and Notice of Rights from the EEOC on July 28, 2010, almost two months before she filed the lawsuit.  See Espinoza Dismissal and Notice of Rights at 2.  She did not receive her Order of Nondetermination from the NMHRD, however, until January 10, 2010, more than three months after she filed her lawsuit.  See Espinoza Order of Nondetermination at 1.  Similarly, Gonzalez did not file her Charge of Discrimination with the NMHRD and EEOC until September 22, 2010, the

_____

Cruces Nursing Center, then that's fine . . . when they responded to the EEOC charge they had a letterhead called Fundamental.  So we pretty much relied on that information to ma[ke] sure that we named it correctly.

Tr. at 9:11-9:20 (Labinoti).  Plaintiffs did not name THI of New Mexico, LLC, or Fundamental Administrative Services, LLC as respondents in the EEOC charges.  The Court will dismiss the Title VII and NMHRA claims against them.

day before she filed the lawsuit.[13]  See Gonzalez Charge of Discrimination at 5.  Gonzalez' Notice

of Right to Sue (Issued on Request) from the EEOC is dated September 24, 2010, the day after she

filed the lawsuit.  See Gonzalez Notice of Right to Sue at 3.  Her Order of Nondetermination from

the NMHRD was dated January 10, 2011.  See Gonzalez Order of Nondetermination at 1.

Recognizing that the lawsuit was filed prematurely in some instances, the Plaintiffs assert that they

eventually obtained the necessary determinations.  See Tr. at 7:1-7:4 (Labinoti).  The Defendants

presented no evidence that Espinoza's or Gonzalez' premature filing of their Complaint deterred the

NMHRD or EEOC from performing their administrative duties, or that the Defendants suffered any

prejudice.[14]   Under Title VII, the Tenth Circuit has recognized that "the failure to obtain a

---

[13]The Plaintiffs' Response states that "Plaintiff Sofia Gonzalez filed with the EEOC, charge no. 453-2010-01399, on or about April 5, 2010 . . . ."  See Response ¶ 20, at 5.  Attached to the response is an Intake Questionnaire from the EEOC that is dated April 5, 2010; however, the timestamp indicates that the EEOC did not receive the questionnaire until September 14, 2010.  See Gonzales Intake Questionnaire at 11.  The executed Charge of Discrimination for the NMHRD and the EEOC is dated September 22, 2010.  See Gonzales Charge of Discrimination at 5.

[14]The Defendants argue that the Defendants did not have an opportunity to answer Gonzalez' administrative charges based on the timing of the EEOC letter to sue and the filing of the complaint in this case.  See Reply at 4 n.4.  Gonzalez does not appear to be at fault, as she filed her intake questionnaire with the EEOC on roughly April 5, 2010.  See Gonzales Intake Questionnaire at 11. A district court should generally not hold failure to comply with nonjurisdictional requirements against a plaintiff when the plaintiff had little control over the circumstances resulting in noncompliance.  See Hiller v. Oklahoma ex rel Used Motor Vehicle & Parts Comm'n, 327 F.3d 1247, 1251 (10th Cir. 2003).  Given that the EEOC did not choose to continue administrative proceedings, instead choosing to issue a right-to-sue letter only two days after the filing of this lawsuit, and that the Defendants point to no specific reason why responding to the EEOC's inquiries would have changed the circumstances of this case, the Court is not persuaded that this situation resulted in any prejudice to the Defendants or deterred the EEOC from performing its administrative duties.  See Martin v. Cent. States Emblems, Inc., 150 F.App'x at 855 n.3 (recognizing that, "the failure to obtain a right-to-sue letter prior to the commencement of a suit is a curable defect"). Furthermore, under the facts of this case, Gonzalez should not bear the blame for the situation.  The Tenth Circuit has recognized that a plaintiff's failure to cooperate with the EEOC can result in the failure to exhaust administrative remedies.  See Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1310 (10th Cir. 2005).  For that situation to arise, however, the plaintiff must do things such as fail to return messages from the EEOC, not provide requested materials, and fail to discuss their charge

right-to-sue letter prior to the commencement of a suit is a curable defect." Martin v. Cent. States

Emblems, Inc., 150 F.App'x at 855 n.3   Furthermore, the Supreme Court of New Mexico has

recognized that receiving an order of nondetermination from the NMHRD after the filing of a

district court complaint suffices to exhaust the plaintiff's administrative remedies.   See

Mitchell-Carr v. McLendon, 127 N.M. at 288, 980 P.2d at 71.  Under New Mexico law, the later

receipt of the determinations, where the filing of the charges occurred before the filing of the

lawsuit, cured Espinoza's and Gonzalez' defective exhaustion of remedies.  The Court has subject-

matter jurisdiction over Espinoza's and Gonzalez' NMHRA and EEOC claims.  The Court will not

dismiss Plaintiffs' NMHRA and EEOC claims with regard to Las Cruces Nursing Center.

## III.   PLAINTIFFS HAVE EXHAUSTED THEIR ADMINISTRATIVE REMEDIES AGAINST SHULL.

The Defendants argue that the Plaintiffs failure to correctly name Shull in the charges filed

with the EEOC means that the Plaintiffs have failed to exhaust their administrative remedies.  The

Plaintiffs argue that, with regard to incorrectly naming Schultz as a Defendant instead of Shull, there

is only one Ken, see Tr. at 11:22-11:23 (Labinoti), and because Ken Shull was named in the

administrative charge, he was aware of the charge and a lawsuit in the federal court should be

permitted against him, see Tr. at 11:24-12:5 (Labinoti).  As a general matter, the NMHRA allows

suits against individuals unlike Title VII.  See Luboyeski v. Hill, 117 N.M. at 382, 872 P.2d at 355.

---

with the EEOC.  See Shikles v. Sprint/United Mgmt. Co., 426 F.3d at 1310.  Here, the facts indicate
that the EEOC was responsible for much of the delay because it did not in a timely manner notice
it had received Gonzalez' intake questionnaire.  Thus, the situation in this case is more similar to
Hiller v. Oklahoma ex rel Used Motor Vehicle & Parts Commission, where equitable considerations
persuaded the Tenth Circuit to excuse the plaintiff's failure to comply with the nonjurisdictional
requirement of receiving a letter from the Attorney General permitting her to pursue her Title VII
claim against a federal employer when  the Attorney General would not give the plaintiff the letter
she needed.  See 327 F.3d at 1251-52.

-24-

No New Mexico cases directly address the issue of misnaming an individual defendant in a charge filed with the NMHRD.  The Supreme Court of New Mexico has recognized that a plaintiff cannot name an individual defendant in a subsequent lawsuit in district court without naming him as a respondent in the charge filed with the NMHRD.  See Luboyeski v. Hill, 117 N.M. at 382, 872 P.2d at 355.  New Mexico courts have not yet addressed whether a suit involving an NMHRA claim can go forward  against a respondent misnamed or misidentified in a charge filed with the NMHRD, or adopted a test laying out the circumstances when a person misnamed or misidentified in a charge filed with the NMHRD can later be added as a defendant in a lawsuit.

Federal courts must determine what a state's Supreme Court would do if confronted with the same issue.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  In Stoner v. New York Life Insurance Co., 311 U.S. 464 (1940), the Supreme Court of the United States explained that, "in cases where jurisdiction rests on diversity of citizenship, federal courts, under the doctrine of Erie Railroad Co. v. Tompkins . . . must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." 311 U.S. at 467.  "In particular, this is true where the intermediate state court has determined the precise question in issue in an earlier suit between the same parties, and the highest court of the state has refused review."  Stoner v. New York Life Insurance Co., 311 U.S. at 467.  See Adams-Arapahoe Joint School Dist. No. 28-J v. Continental Ins. Co., 891 F.2d 772, 774 (10th Cir. 1989)("With respect to issues which the Colorado Supreme Court has not addressed, we may consider all available resources, including Colorado appellate court decisions, other state and federal decisions, and the general trend of authority, to determine how the Colorado Supreme Court would construe the law in this case.").  As the Tenth Circuit explained in Wade v. Emcasco Insurance Co., 483 F.3d 657 (10th Cir. 2007):

> In cases arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply the state law. . . . The federal court must follow the most recent decisions of the state's highest court. . . . Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. . . .  In doing so, it may seek guidance from decisions rendered by lower courts in the relevant state . . . . appellate decisions in other states with similar legal principles . . . . district court decisions interpreting the law of the state in question, . . . and the general weight and trend of authority in the relevant area of law. . . .  Ultimately, however, the Court's task is to predict what the state supreme court would do. Our review of the district court's interpretation of state law is de novo.

483 F.3d at 665-66 (internal citations and quotation marks omitted).

In the context of Title VII, federal courts recognize that laypersons, not attorneys, usually write EEOC complaints, requiring that the complaints be liberally construed.  See Romero v. Union Pac. R.R., 615 F.2d at 1311.  The requirement, however, that a person name the defendant in the charge of discrimination is not merely a technicality, but rather "brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law." Alvarado v. Bd. of Trs., 848 F.2d at 458.  Under federal law, there are some exceptions to the requirement that the person filing the charge of discrimination name the defendant in the charge.  Two exceptions are as follows: (i) the defendant is mentioned in the text of the charge; or (ii) "there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation." Romero v. Union Pac. R.R., 615 F.2d at 1311.  In the context of omitting a defendant's name entirely from the charge of discrimination, the Tenth Circuit applies a four-factor test to see if they may later be named as a defendant in a lawsuit:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC

proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Romero v. Union Pac. R.R., 615 F.2d at 1312.  A district court may also consider additional relevant

factors.  See Romero v. Union Pac. R.R., 615 F.2d at 1312.

In the context of determining exhaustion of remedies under New Mexico law, the situation in this case is closest to the first of these exceptions; the defendant is mentioned in the text of the charge.  See Romero v. Union Pac. R.R., 615 F.2d at 1311.  Given that under Title VII a person may not name a supervisor as a party in a charging instrument, but that a supervisor may be a respondent under the NMHRA, the Supreme Court of New Mexico would likely recognize that complaining about a person in the text of a charge would be sufficient to name them as a respondent in the case. See Romero v. Union Pac. R.R., 615 F.2d at 1311.  Otherwise, a person who chooses to file a charge of discrimination with the EEOC could almost never name a supervisor as a respondent as Title VII forbids holding supervisors liable.[15]  An alternative rule would frustrate the work-sharing agreement between the EEOC and the NMHRD in which each agency designates the other as its agent for the purpose of receiving and drafting charges.  See Mitchell-Carr v. McLendon, 127 N.M. at 286, 980 P.2d at 69.  Furthermore, when the person filing the charge has misspelled the name of an individual respondent in the charge, the Supreme Court of New Mexico would likely consider whether the misspelling prevented the defendant from having notice of the charge or frustrated the respective agency's investigation and attempted reconciliation of the matter.  See Romero v. Union Pac. R.R.,

---

[15]The Defendants never specifically moved for dismissal of the Title VII claims against Shull in their Motion.  See Motion at 1-5.  They moved, however, to dismiss the entire Complaint. Consequently, the Court will dismiss the Title VII claim against him.  See Williams v. W.D. Sports, N.M., Inc., 497 F.3d at 1083 n.1.

615 F.2d at 1311.  Such a rule would focus on whether the administrative process has worked -- the goal of exhausting administrative remedies.

Here, one of the Plaintiffs named Shull correctly.  In her Charge of Discrimination and Intake Questionnaire filed with the EEOC on April 6, 2010, Espinoza named Las Cruces Nursing Center and Kenneth Shull in the questionnaire.  See Espinoza Charge of Discrimination at 4; Espinoza Intake Questionnaire at 14.  Thus, the EEOC would have known Shull's correct name for purposes of its investigation and attempted reconciliation.  Furthermore, in the response that Las Cruces Nursing sent to the EEOC regarding Campos, it identified the relevant individual as Kenneth Shull.  See Las Cruces Nursing Center Response at 14-17 (dated May 24, 2010), filed February 16, 2011 (Doc. 5, Ex. 2).  The other two Plaintiffs also named this individual in the body of their charge filed with the EEOC.  Campos listed his name as Kenneth Shall in her charge of discrimination.  See Campos Charge of Discrimination at 10.  Likewise, Gonzalez listed his name as Ken Shall in her charge of discrimination.  See Gonzalez Charge of Discrimination at 5.

More importantly, all three Plaintiffs specifically described the discriminatory conduct Shull allegedly committed.  Campos discussed in her charge how Shull discriminated against her, including making ethnic comments against Hispanic people, making fun of Mexican employees because they do not speak English, and assaulting her.  See Campos Charge of Discrimination at 5. Espinoza in her charge described Shull's involvement in the discrimination, specifically that he made demeaning comments about a Hispanic housekeeper not knowing English, and that he stated he was demoting her to a part-time position and replacing her with another employee, who is Anglo, for pretextual reasons.  See Espinoza Charge of Discrimination at 4.  Lastly, Gonzalez in her charge stated that she overheard Shull making fun of a Hispanic co-worker, Campos, because of her accent, and that Shull engaged in other similar conduct.  See Gonzalez Charge of Discrimination at 5.

Given the state of this record, the Court believes that the Supreme Court of New Mexico would conclude that Shull had notice of the discrimination charges against him, and that the misspelling of his name would not have frustrated the EEOC's investigation and attempted reconciliation of the discrimination charges. Thus, the Court will not dismiss the NMHRA claims against Shull. Additionally, because the parties acknowledge that there is only one Shull or similarly sounding surnamed individual, the Court will also substitute Kenneth Shull as the proper name of the individual Defendant in this case.

**IT IS ORDERED** that: (i) the Defendants' Motion to Dismiss (Doc. 3) is granted in part and denied in part; (ii) the Motion is denied in part because Plaintiffs Rosaura Campos, Edna Espinoza, and Sofia Gonzalez have sufficiently averred exhaustion of their administrative remedies as to some of the Defendants in their Amended Complaint, filed January 28, 2011 (Doc. 1, Ex. 2); (iii) the Motion is granted in part in that, subject to the substitution of Kenneth Shull and THI of New Mexico at Las Cruces, LLC d/b/a Las Cruces Nursing Center as stated below, the claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the New Mexico Human Rights Act, N.M.S.A. 1978, § 28-1-7, against all the originally named Defendants are dismissed; (iv) the motion is denied in part in that the Plaintiffs have exhausted their administrative remedies against Defendant THI of New Mexico at Las Cruces, LLC d/b/a Las Cruces Nursing Center for their NMHRA and Title VII claims; (v) the motion is denied in part in that the Plaintiffs have exhausted their administrative remedies against Defendant Kenneth Shull for their NMHRA claims; (vi) the Motion is granted in part in that the Title VII claim against Shull is dismissed; (vii) THI of New Mexico at Las Cruces, LLC d/b/a Las Cruces Nursing Center shall be substituted as the proper name for Las Cruces Nursing Center and THI of New Mexico at Las Cruces, LLC; and (viii) Kenneth Shull shall be substituted as the proper name for Kenneth Schultz; and (ix) the Motion is

-29-

otherwise denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Daniela Labinoti
Law Firm of Daniela Labinoti, P.C.

El Paso, Texas

     *Attorney for the Plaintiffs*

Trent A. Howell
Samantha M. Jarrett
Jackson Lewis, LLP
Albuquerque, New Mexico

     *Attorneys for the Defendants*